IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| LOUIS A. MANFREDI and | : | |
| CHARLOTTE M. MANFREDI | : | |
| | : | CASE NO. 1:09-bk-08973 RNO |
| Debtors | : | |

*******************************************************************

| | | |
|---|---|---|
| RICHARD HAMM, | : | |
| | : | |
| Movant | : | |
| | : | Motion to Dismiss Case |
| v. | : | |
| | : | |
| LOUIS A. MANFREDI and | : | |
| CHARLOTTE M. MANFREDI | : | |
| | : | |
| | : | |
| Respondents | : | |

# OPINION[1]

### I. Procedural History

Louis A. Manfredi and Charlotte M. Manfredi, (hereinafter collectively known as "the Debtors") filed their a Chapter 13 petition on November 18, 2009. On February 8, 2010, Richard Hamm filed a Motion to Dismiss. An evidentiary hearing was held on March 18, 2010. This matter was subsequently taken under advisement and a briefing schedule was set. As both Briefs have been filed, this matter is now ripe for adjudication. For the reasons set forth below, I find that the Debtors' bankruptcy petition was filed in good faith and deny the Motion to Dismiss.

### II. Background

---

[1] Drafted with the assistance of William C. Blasses, Esq., Law Clerk

1

Prior to the Debtors' bankruptcy filing, Mr. Manfredi and Mr. Hamm had been engaged in network marketing together. Hr'g Tr. 71-72, March 18, 2010. Their business relationship began in 1992, with the formation of a partnership called Integrated Financial Resource Group, also known as IFRG. Hr'g Tr. 27, 71. In I993, the IFRG partnership got involved doing network marketing for a company called Market America. Hr'g Tr. 74. Mr. Manfredi was responsible for the marketing side of the partnership which involved the "up-front legwork" as well as handling and recruiting distributors. Hr'g Tr. 72. Mr. Hamm handled administrative duties and financing the partnership's operations. Hr'g Tr. 72. In 2009, Mr. Hamm and Mr. Manfredi dissolved the IFRG partnership. Hr'g Tr. 28.

A partnership dissolution agreement was entered into and signed by both Mr. Hamm and Mr. Manfredi on February 21, 2009. Resp't Ex. 1.1. In addition, Mr. Manfredi executed two promissory notes totaling $416,000.00 with Mr.. Hamm listed as the Payee. Resp't Ex. 1.2 & 1.3. Shortly thereafter, on November 18, 2009, the Debtors, Mr. Manfredi and his wife, Charlotte, filed their Chapter 13 bankruptcy petition.

**III.     Discussion**

Dismissal of a Chapter 13 bankruptcy case is governed by 11 U.S.C. § 1307(c)[2], which allows the court to convert or dismiss a case for "cause". *In re Dahlgren*, 418 B.R. 852, 855 (Bankr. D.N.J. 2009). While § 1307(c) has a list of illustrative causes, the Third Circuit recognizes that additional factors, such as lack of good faith, can be cause for dismissal. *In re Lilley*, 91 F.3d 491, 496 (3d.Cir. 1996). Mr. Hamm argues that the present case should be

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

dismissed because Mr. Manfredi has failed to produce evidence that his filing was in good faith.

When a lack of good faith is shown, conversion is unnecessary because the good faith requirement in Chapter 13 and Chapter 7 cases is the same. *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) (citing *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). The Third Circuit's application of burdens for evaluating the good faith of a bankruptcy filing was outlined in *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *In re Quinn*, 423 B.R. 454, 461-462 (Bankr. D.Del. 2009); *In re Dahlgren,* 418 B.R. 852, 856 (Bankr. D.N.J. 2009).

A determination of good faith requires the court to look at the totality of the circumstances. *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). The main factors applied by most courts in this Circuit are highlighted in *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996); *see, e.g., In re Myers*, 491 F.3d at 125 (reviewing the bankruptcy court's application of the *Lilley* factors to affirm the dismissal of the Chapter 13 case). They include:

> [T]he nature of the debt . . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Lilley*, 91 F.3d at 496 (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992).

In analyzing the parties' respective burdens and the totality of the circumstances, it is important to dismiss for "bad faith" only in narrow circumstances so as to avoid ". . . a risk of judicial usurpation of the legislative power to determine the scope of and eligibility for bankruptcy relief in general or under a particular chapter." *In re Jensen*, 369 B.R. 210, 233 (Bankr. E.D.Pa. 2007).

3

The Third Circuit has provided two-fold guidance with respect to weighing the burdens and evaluating the circumstances:

> First, we noted that a finding of lack of good faith "should not [be] lightly infer[red]." Second, we cautioned that dismissal should be "confined carefully" and utilized only in "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364, 373 (3d Cir. 2007) (internal citations omitted).

Mindful of these considerations, I will now consider each of the factors in analyzing whether the petition was filed in good faith.

### A. The Nature of the Debt and How the Debt Arose.

This factor primarily looks at whether the incurring of a debt resulted from bad acts or intentions of the debtor. *See, e.g., In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007) (debt arose from an adverse judgement of a fraudulent conveyance); *In re Jensen*, 369 B.R. 210, 235 (Bankr. E.D.Pa. 2007) (noting that ". . . for a debtor's spending habits to take on bad faith significance, ordinarily there must be some additional aggravating factors at issue, such as the debtor's concealment of assets, falsification of records, transfer of assets beyond the reach of creditors or some other behavior designed to interfere with the 'orderly judicial process for resolution of . . . debt.' "). Mr. Hamm outlines several sources of debt, including a priority claim of the IRS in the amount of $101,291.00, two secured mortgage claims of Wachovia Bank in amounts of $72,000.00 and $29,605.00, and the aggregate total of $148,162.00 in credit card debt. Mr. Hamm argues that the failure to specifically give a detailed account for each debt is indicative of bad faith. Furthermore, Mr. Hamm refers solely to his own testimony as evidence that Mr. Manfredi had incurred much debt through gambling and that Mr. Manfredi had lacked "gainful

4

Case 1:09-bk-08973-RNO   Doc 68   Filed 07/23/10   Entered 07/23/10 11:45:15   Desc
Main Document      Page 4 of 20

employment" since 2001. Movant's Br. 20.; Hr'g Tr. 75-77. The other debt cited is a claim for $368,000.00 by Mr. Hamm purportedly pursuant to the dissolution agreement and promissory notes. Movant's Br. 19.

However, even assuming that everything that Mr. Hamm alleges is true, poor financial management and spending practices are evidence of "bad judgment, not bad faith." *In re Jensen*, 369 B.R. 210, 234 (Bankr. E.D.Pa. 2007) (applying the *Lilley* evaluation of the "totality of the circumstances" to determine if a Chapter 13 plan was filed in good faith). Mr. Hamm has not highlighted any bad faith by the Debtors with regard to the incurring of any debt. The secured mortgage claims and an IRS claim are not, in and of themselves, suspicious or indicative of bad faith. Additionally, Mr. Hamm's cited testimony serves to support a conclusion of poor judgment rather than bad faith. Nor is there evidence to show that these debts were incurred on the eve of the bankruptcy filing. Rather, Mr. Hamm's own testimony suggested that he was aware that Mr. Manfredi had been running up debts since 2000 or 2001 and that he was aware of how they were incurred. Hr'g Tr. 75-76, 105. As discussed in the *Jensen* case above, if poor financial management was sufficient for dismissal, very few people would be eligible for protection under the Bankruptcy Code.

    **B.**  **The Timing of the Petition and the Debtors' Motive in Filing the Petition.**

Mr. Hamm argues that the Debtors' motive for filing their bankruptcy petition was to utilize funds that were to be payable to Mr. Hamm to fund a Chapter 13 plan. Mr. Hamm also questions whether the Debtors have established sufficient evidence to show that their motive for filing for bankruptcy protection was their deteriorating financial situation. While Mr. Hamm argues on page 22 of the Movant's Brief that "[t]he record is devoid of evidence as to acute

5

financial distress", Mr. Hamm's own testimony shows that Mr. Manfredi was in distress prior to filing bankruptcy. Specifically, the IFRG partnership was allegedly dissolved because Mr. Manfredi was in financial difficulty and could get a loan to help him if the partnership was dissolved. Hr'g Tr. 77. Mr. Hamm characterized Mr. Manfredi's debt as increasing for many years prior to the filing of the bankruptcy petition. Hr'g Tr. 76-77. Consistent with the characterizations by Mr. Hamm of Mr. Manfredi's increasing debt, Mr. Manfredi testified that the exhaustion of his line of credit with Wachovia and his mounting tax debt, in excess of $100,000.00, led to his seeking of bankruptcy protection. Hr'g Tr. 59-60. Based on my analysis of the record, I do not find bad faith surrounding the timing of the petition or the Debtors' motive in filing the petition.

     **C.  How the Debtor's Actions Affected Creditors.**

 Mr. Hamm argues that this factor weighs in favor of dismissal because his claim was originally misstated as "contingent" and "unliquidated" in the schedules and because the "intended effect" of the filing is to reduce the remainder of his payments under the partnership dissolution agreement and notes from $368,000.00. As an initial note, I am unsure how an alleged misstatement of a claim as "contingent" or "unliquidated" on a bankruptcy schedule could have any material affect on a creditor so long as the creditor did, in fact, receive notice of the bankruptcy filing. Federal Rules of Bankruptcy Procedure 3001 and 3002 provide guidelines for filing a proof of claim in a bankruptcy. Section 502(a) provides that after a proof of claim is filed in compliance with the Bankruptcy Code and the Rules, the claim is "deemed allowed" unless a party in interest files an objection. An alleged misstatement would, therefore, be more relevant in determining whether a debtor had been forthcoming with the court and creditors, as

6

Case 1:09-bk-08973-RNO  Doc 68  Filed 07/23/10  Entered 07/23/10 11:45:15  Desc
Main Document  Page 6 of 20

discussed below. I take judicial notice that Mr. Hamm filed an unsecured proof of claim in the amount of $368,000.00 on April 17, 2010.

Mr. Hamm also contends that the Debtors' filing was in bad faith because they sought to reduce or even completely eliminate any payments to Mr. Hamm. The reduction of payments in a Chapter 13 to certain creditors is specifically contemplated by the Bankruptcy Code as an alternative to full payment. *See, e.g.*, § 1322(a)(4). Nonetheless, this argument serves to attack the adequacy of a hypothetical plan rather than show a lack of good faith in filing. For the Debtors' plan to be confirmed, it will have to be in good faith and treat all creditors in full compliance with the confirmation requirements of the Bankruptcy Code. *See* § 1325(a)(3).

### D. The Debtors' Treatment of Creditors Before and After the Petition was Filed.

Mr. Hamm does not specifically discuss this factor in his Brief. However, the Brief itself reflects upon Mr. Manfredi and Mr. Hamm's relationship pre- and post-petition. Generally, this factor looks at actions taken by the debtor to frustrate creditors. *See, e.g., In re LeGree*, 285 B.R. 615, 619-620 (Bankr. E.D.Pa. 2002) (debtor filed a petition ten times in eighteen years to frustrate creditors); *In re Kerschner*, 246 B.R. 495, 497-499 (Bankr. M.D.Pa. 2000) (finding that the dissipation of money in violation of a court order and in contemplation of bankruptcy was bad faith as it was intended to reduce distributions to creditors). In the present case, both parties testified that Mr. Manfredi had paid $48,000.00 to Mr. Hamm before filing for bankruptcy. Ht'g Tr. 39, 107. Additionally, Mr. Hamm testified on several occasions that Mr. Manfredi had told him about his debt problems even before they entered into the dissolution agreement that is the basis for Mr. Hamm's claim. Hr'g Tr. 76-77, 105.

### E. Whether the Debtor Has Been Forthcoming with the Bankruptcy

**Court and the Creditors.**

The parties are in severe disagreement as to the facts related to this factor. Specifically, Mr. Hamm argues that omissions and inaccuracies in the schedules show that the Debtors have not been forthcoming. *See* Movant's Br. 17-18. Mr. Hamm points specifically to errors alleged in his Motion and conceded at the Debtors' § 341 meeting of creditors, which was transcribed and admitted as Movant's Exhibit 1.

As noted in the context of a motion to dismiss, a Chapter 7 case by *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D.Ohio 2007), mistakes occur in the drafting of schedules. *See also In re Kerschner*, 246 B.R. 395, 499 (Bankr. M.D.Pa. 2000) (in the absence of any evidence to support that the omission of assets from schedules was more than an oversight, the omissions are not material to a determination of bad faith). The existence of an inaccuracy alone should not warrant dismissal of a case for bad faith. *Gonyer*, 383 B.R. at 322. In the present case, the Debtors have made efforts to amend their schedules on their own initiative and have been forthcoming in admitting mistakes to the Court. Furthermore, the evidence appears to show a pattern of honesty with respect to the Debtors' treatment of creditors. In light of mistakes, the Debtors have actively made amendments to schedules. *See* Docket Nos. 34, 57, 58. The submitted evidence of the § 341 transcript indicates that when questioned about the schedules, the Debtors clarified their mistakes. Additionally, through testimony, Mr. Hamm indicated that Mr. Manfredi had disclosed significant detail as to his financial situation prior to filing the petition. Hr'g Tr. 76-77, 105.

Mr. Hamm also takes issue with the Debtors' claimed business expenses on the Debtors' Amended Form B22C and the Amended Schedule J. Mr. Hamm argues that the itemization

8

provided in both documents is insufficient and that the Debtors should provide more detail. Movant's Br. 18-19. Mr. Hamm hypothesizes that the Debtors may be attempting to deduct the same expenses twice. Movant's Br. 18-19. However, the record is devoid of evidence of the same.

Lastly, Mr. Hamm appears to argue that the potential for Mr. Manfredi to reduce his income generating activities supports the dismissal Motion. This argument is purely speculative on potential post-petition events and has no basis in the evidentiary record. Furthermore, changes to a debtor's income or expenses, which are known or virtually certain, can be addressed at a Chapter 13 confirmation hearing. *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010). Further, confirmation of a Chapter 13 plan has its own "good faith" component. *See* § 1325(a)(3).

### F. The Totality of the Circumstances.

In analyzing these factors, I am mindful that dismissal is not something to be considered lightly. Mr. Hamm met his initial burden in questioning the Debtors' good faith by pointing to the misstatements and mistakes on the Debtors' initial schedules. However, I also find that the Debtors have met their burden to establish their own good faith in filing based on the evidentiary record. There is nothing in this record that suggests that this bankruptcy was filed solely to oppress a single large creditor, such as Mr. Hamm. Furthermore, as discussed above, the Debtors appear to have been generally open and honest with regard to their financial situation, even disclosing the details of their financial difficulties prior to filing. While Mr. Hamm is concerned about how he might be treated within the confines of a confirmed plan, a plan has yet to be confirmed and such concerns are, at this point, solely hypothetical. Furthermore, while Mr. Hamm is a very large creditor relative to the remaining debts of the estate, the record

9

demonstrates that he entered into the agreement which resulted in his claim with significant knowledge and understanding of the Debtors' financial circumstances and spending proclivities. Therefore, after considering the totality of the circumstances, I find that the Debtors' Chapter 13 petition was filed in good faith.

**IV.	Conclusion**

For the reasons set forth above, the Motion to Dismiss is denied. An Order will be entered consistent with the foregoing Opinion.

By the Court,

Date: July 23, 2010

_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

10

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| LOUIS A. MANFREDI and | : | |
| CHARLOTTE M. MANFREDI | : | |
| | : | CASE NO. 1:09-bk-08973 RNO |
| Debtors | : | |

***************************************************************

| | | |
|---|---|---|
| RICHARD HAMM, | : | |
| | : | |
| Movant | : | |
| | : | Motion to Dismiss Case |
| v. | : | |
| | : | |
| LOUIS A. MANFREDI and | : | |
| CHARLOTTE M. MANFREDI | : | |
| | : | |
| | : | |
| Respondents | : | |

# **OPINION**[1]

### I.     **Procedural History**

Louis A. Manfredi and Charlotte M. Manfredi, (hereinafter collectively known as "the Debtors") filed their a Chapter 13 petition on November 18, 2009. On February 8, 2010, Richard Hamm filed a Motion to Dismiss. An evidentiary hearing was held on March 18, 2010. This matter was subsequently taken under advisement and a briefing schedule was set. As both Briefs have been filed, this matter is now ripe for adjudication. For the reasons set forth below, I find that the Debtors' bankruptcy petition was filed in good faith and deny the Motion to Dismiss.

### II.    **Background**

---

[1]Drafted with the assistance of William C. Blasses, Esq., Law Clerk

1

Prior to the Debtors' bankruptcy filing, Mr. Manfredi and Mr. Hamm had been engaged in network marketing together. Hr'g Tr. 71-72, March 18, 2010. Their business relationship began in 1992, with the formation of a partnership called Integrated Financial Resource Group, also known as IFRG. Hr'g Tr. 27, 71. In I993, the IFRG partnership got involved doing network marketing for a company called Market America. Hr'g Tr. 74. Mr. Manfredi was responsible for the marketing side of the partnership which involved the "up-front legwork" as well as handling and recruiting distributors. Hr'g Tr. 72. Mr. Hamm handled administrative duties and financing the partnership's operations. Hr'g Tr. 72. In 2009, Mr. Hamm and Mr. Manfredi dissolved the IFRG partnership. Hr'g Tr. 28.

A partnership dissolution agreement was entered into and signed by both Mr. Hamm and Mr. Manfredi on February 21, 2009. Resp't Ex. 1.1. In addition, Mr. Manfredi executed two promissory notes totaling $416,000.00 with Mr.. Hamm listed as the Payee. Resp't Ex. 1.2 & 1.3. Shortly thereafter, on November 18, 2009, the Debtors, Mr. Manfredi and his wife, Charlotte, filed their Chapter 13 bankruptcy petition.

### III. Discussion

Dismissal of a Chapter 13 bankruptcy case is governed by 11 U.S.C. § 1307(c)[2], which allows the court to convert or dismiss a case for "cause". *In re Dahlgren*, 418 B.R. 852, 855 (Bankr. D.N.J. 2009). While § 1307(c) has a list of illustrative causes, the Third Circuit recognizes that additional factors, such as lack of good faith, can be cause for dismissal. *In re Lilley*, 91 F.3d 491, 496 (3d.Cir. 1996). Mr. Hamm argues that the present case should be

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

dismissed because Mr. Manfredi has failed to produce evidence that his filing was in good faith.

When a lack of good faith is shown, conversion is unnecessary because the good faith requirement in Chapter 13 and Chapter 7 cases is the same. *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) (citing *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). The Third Circuit's application of burdens for evaluating the good faith of a bankruptcy filing was outlined in *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *In re Quinn*, 423 B.R. 454, 461-462 (Bankr. D.Del. 2009); *In re Dahlgren,* 418 B.R. 852, 856 (Bankr. D.N.J. 2009).

A determination of good faith requires the court to look at the totality of the circumstances. *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). The main factors applied by most courts in this Circuit are highlighted in *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996); *see, e.g., In re Myers*, 491 F.3d at 125 (reviewing the bankruptcy court's application of the *Lilley* factors to affirm the dismissal of the Chapter 13 case). They include:

> [T]he nature of the debt . . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Lilley*, 91 F.3d at 496 (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992).

In analyzing the parties' respective burdens and the totality of the circumstances, it is important to dismiss for "bad faith" only in narrow circumstances so as to avoid ". . . a risk of judicial usurpation of the legislative power to determine the scope of and eligibility for bankruptcy relief in general or under a particular chapter." *In re Jensen*, 369 B.R. 210, 233 (Bankr. E.D.Pa. 2007).

3

The Third Circuit has provided two-fold guidance with respect to weighing the burdens and evaluating the circumstances:

> First, we noted that a finding of lack of good faith "should not [be] lightly infer[red]." Second, we cautioned that dismissal should be "confined carefully" and utilized only in "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364, 373 (3d Cir. 2007) (internal citations omitted).

Mindful of these considerations, I will now consider each of the factors in analyzing whether the petition was filed in good faith.

### A. The Nature of the Debt and How the Debt Arose.

This factor primarily looks at whether the incurring of a debt resulted from bad acts or intentions of the debtor. *See, e.g., In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007) (debt arose from an adverse judgement of a fraudulent conveyance); *In re Jensen*, 369 B.R. 210, 235 (Bankr. E.D.Pa. 2007) (noting that ". . . for a debtor's spending habits to take on bad faith significance, ordinarily there must be some additional aggravating factors at issue, such as the debtor's concealment of assets, falsification of records, transfer of assets beyond the reach of creditors or some other behavior designed to interfere with the 'orderly judicial process for resolution of . . . debt.' "). Mr. Hamm outlines several sources of debt, including a priority claim of the IRS in the amount of $101,291.00, two secured mortgage claims of Wachovia Bank in amounts of $72,000.00 and $29,605.00, and the aggregate total of $148,162.00 in credit card debt. Mr. Hamm argues that the failure to specifically give a detailed account for each debt is indicative of bad faith. Furthermore, Mr. Hamm refers solely to his own testimony as evidence that Mr. Manfredi had incurred much debt through gambling and that Mr. Manfredi had lacked "gainful

4

employment" since 2001.  Movant's Br. 20.; Hr'g Tr. 75-77.  The other debt cited is a claim for $368,000.00 by Mr. Hamm purportedly pursuant to the dissolution agreement and promissory notes.  Movant's Br. 19.

However, even assuming that everything that Mr. Hamm alleges is true, poor financial management and spending practices are evidence of "bad judgment, not bad faith."  *In re Jensen*, 369 B.R. 210, 234 (Bankr. E.D.Pa. 2007) (applying the *Lilley* evaluation of the "totality of the circumstances" to determine if a Chapter 13 plan was filed in good faith).  Mr. Hamm has not highlighted any bad faith by the Debtors with regard to the incurring of any debt.  The secured mortgage claims and an IRS claim are not, in and of themselves, suspicious or indicative of bad faith.  Additionally, Mr. Hamm's cited testimony serves to support a conclusion of poor judgment rather than bad faith.  Nor is there evidence to show that these debts were incurred on the eve of the bankruptcy filing. Rather, Mr. Hamm's own testimony suggested that he was aware that Mr. Manfredi had been running up debts since 2000 or 2001 and that he was aware of how they were incurred.  Hr'g Tr. 75-76, 105.  As discussed in the *Jensen* case above, if poor financial management was sufficient for dismissal, very few people would be eligible for protection under the Bankruptcy Code.

### B. The Timing of the Petition and the Debtors' Motive in Filing the Petition.

Mr. Hamm argues that the Debtors' motive for filing their bankruptcy petition was to utilize funds that were to be payable to Mr. Hamm to fund a Chapter 13 plan.  Mr. Hamm also questions whether the Debtors have established sufficient evidence to show that their motive for filing for bankruptcy protection was their deteriorating financial situation.  While Mr. Hamm argues on page 22 of the Movant's Brief that "[t]he record is devoid of evidence as to acute

5

financial distress", Mr. Hamm's own testimony shows that Mr. Manfredi was in distress prior to filing bankruptcy. Specifically, the IFRG partnership was allegedly dissolved because Mr. Manfredi was in financial difficulty and could get a loan to help him if the partnership was dissolved. Hr'g Tr. 77. Mr. Hamm characterized Mr. Manfredi's debt as increasing for many years prior to the filing of the bankruptcy petition. Hr'g Tr. 76-77. Consistent with the characterizations by Mr. Hamm of Mr. Manfredi's increasing debt, Mr. Manfredi testified that the exhaustion of his line of credit with Wachovia and his mounting tax debt, in excess of $100,000.00, led to his seeking of bankruptcy protection. Hr'g Tr. 59-60. Based on my analysis of the record, I do not find bad faith surrounding the timing of the petition or the Debtors' motive in filing the petition.

          **C.     How the Debtor's Actions Affected Creditors.**

Mr. Hamm argues that this factor weighs in favor of dismissal because his claim was originally misstated as "contingent" and "unliquidated" in the schedules and because the "intended effect" of the filing is to reduce the remainder of his payments under the partnership dissolution agreement and notes from $368,000.00. As an initial note, I am unsure how an alleged misstatement of a claim as "contingent" or "unliquidated" on a bankruptcy schedule could have any material affect on a creditor so long as the creditor did, in fact, receive notice of the bankruptcy filing. Federal Rules of Bankruptcy Procedure 3001 and 3002 provide guidelines for filing a proof of claim in a bankruptcy. Section 502(a) provides that after a proof of claim is filed in compliance with the Bankruptcy Code and the Rules, the claim is "deemed allowed" unless a party in interest files an objection. An alleged misstatement would, therefore, be more relevant in determining whether a debtor had been forthcoming with the court and creditors, as

6

discussed below. I take judicial notice that Mr. Hamm filed an unsecured proof of claim in the amount of $368,000.00 on April 17, 2010.

Mr. Hamm also contends that the Debtors' filing was in bad faith because they sought to reduce or even completely eliminate any payments to Mr. Hamm. The reduction of payments in a Chapter 13 to certain creditors is specifically contemplated by the Bankruptcy Code as an alternative to full payment. *See, e.g.*, § 1322(a)(4). Nonetheless, this argument serves to attack the adequacy of a hypothetical plan rather than show a lack of good faith in filing. For the Debtors' plan to be confirmed, it will have to be in good faith and treat all creditors in full compliance with the confirmation requirements of the Bankruptcy Code. *See* § 1325(a)(3).

### D. The Debtors' Treatment of Creditors Before and After the Petition was Filed.

Mr. Hamm does not specifically discuss this factor in his Brief. However, the Brief itself reflects upon Mr. Manfredi and Mr. Hamm's relationship pre- and post-petition. Generally, this factor looks at actions taken by the debtor to frustrate creditors. *See, e.g., In re LeGree*, 285 B.R. 615, 619-620 (Bankr. E.D.Pa. 2002) (debtor filed a petition ten times in eighteen years to frustrate creditors); *In re Kerschner*, 246 B.R. 495, 497-499 (Bankr. M.D.Pa. 2000) (finding that the dissipation of money in violation of a court order and in contemplation of bankruptcy was bad faith as it was intended to reduce distributions to creditors). In the present case, both parties testified that Mr. Manfredi had paid $48,000.00 to Mr. Hamm before filing for bankruptcy. Ht'g Tr. 39, 107. Additionally, Mr. Hamm testified on several occasions that Mr. Manfredi had told him about his debt problems even before they entered into the dissolution agreement that is the basis for Mr. Hamm's claim. Hr'g Tr. 76-77, 105.

### E. Whether the Debtor Has Been Forthcoming with the Bankruptcy

7

**Court and the Creditors.**

The parties are in severe disagreement as to the facts related to this factor. Specifically, Mr. Hamm argues that omissions and inaccuracies in the schedules show that the Debtors have not been forthcoming. *See* Movant's Br. 17-18. Mr. Hamm points specifically to errors alleged in his Motion and conceded at the Debtors' § 341 meeting of creditors, which was transcribed and admitted as Movant's Exhibit 1.

As noted in the context of a motion to dismiss, a Chapter 7 case by *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D.Ohio 2007), mistakes occur in the drafting of schedules. *See also In re Kerschner*, 246 B.R. 395, 499 (Bankr. M.D.Pa. 2000) (in the absence of any evidence to support that the omission of assets from schedules was more than an oversight, the omissions are not material to a determination of bad faith). The existence of an inaccuracy alone should not warrant dismissal of a case for bad faith. *Gonyer*, 383 B.R. at 322. In the present case, the Debtors have made efforts to amend their schedules on their own initiative and have been forthcoming in admitting mistakes to the Court. Furthermore, the evidence appears to show a pattern of honesty with respect to the Debtors' treatment of creditors. In light of mistakes, the Debtors have actively made amendments to schedules. *See* Docket Nos. 34, 57, 58. The submitted evidence of the § 341 transcript indicates that when questioned about the schedules, the Debtors clarified their mistakes. Additionally, through testimony, Mr. Hamm indicated that Mr. Manfredi had disclosed significant detail as to his financial situation prior to filing the petition. Hr'g Tr. 76-77, 105.

Mr. Hamm also takes issue with the Debtors' claimed business expenses on the Debtors' Amended Form B22C and the Amended Schedule J. Mr. Hamm argues that the itemization

8

provided in both documents is insufficient and that the Debtors should provide more detail. Movant's Br. 18-19. Mr. Hamm hypothesizes that the Debtors may be attempting to deduct the same expenses twice. Movant's Br. 18-19. However, the record is devoid of evidence of the same.

Lastly, Mr. Hamm appears to argue that the potential for Mr. Manfredi to reduce his income generating activities supports the dismissal Motion. This argument is purely speculative on potential post-petition events and has no basis in the evidentiary record. Furthermore, changes to a debtor's income or expenses, which are known or virtually certain, can be addressed at a Chapter 13 confirmation hearing. *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010). Further, confirmation of a Chapter 13 plan has its own "good faith" component. *See* § 1325(a)(3).

### F. The Totality of the Circumstances.

In analyzing these factors, I am mindful that dismissal is not something to be considered lightly. Mr. Hamm met his initial burden in questioning the Debtors' good faith by pointing to the misstatements and mistakes on the Debtors' initial schedules. However, I also find that the Debtors have met their burden to establish their own good faith in filing based on the evidentiary record. There is nothing in this record that suggests that this bankruptcy was filed solely to oppress a single large creditor, such as Mr. Hamm. Furthermore, as discussed above, the Debtors appear to have been generally open and honest with regard to their financial situation, even disclosing the details of their financial difficulties prior to filing. While Mr. Hamm is concerned about how he might be treated within the confines of a confirmed plan, a plan has yet to be confirmed and such concerns are, at this point, solely hypothetical. Furthermore, while Mr. Hamm is a very large creditor relative to the remaining debts of the estate, the record

9

demonstrates that he entered into the agreement which resulted in his claim with significant knowledge and understanding of the Debtors' financial circumstances and spending proclivities. Therefore, after considering the totality of the circumstances, I find that the Debtors' Chapter 13 petition was filed in good faith.

**IV.    Conclusion**

For the reasons set forth above, the Motion to Dismiss is denied. An Order will be entered consistent with the foregoing Opinion.

By the Court,

*[signature]*

Date: July 23, 2010

Robert N. Opel, II, Bankruptcy Judge

(BI)

10